Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 5486 | **DATE** | February 3, 2011 |
| **CASE TITLE** | *Reiff v. Calumet City, et al.* | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the court rejects Calumet City's assertion that the plaintiff's claims must be arbitrated. The defendants are given until February 22, 2011, to answer or otherwise plead. Status set for March 1, 2011 at 11:00 a.m.

■[ For further details see text below.]

00:00

## STATEMENT

The plaintiff sued Calumet City in state court alleging various claims relating to her termination for violating the Calumet City residency requirement. On August 30, 2010, Calumet City removed the case from the Circuit Court of Cook County and then filed a motion to dismiss and/or compel arbitration. The court set a briefing schedule and, when the plaintiff did not respond, dismissed the case because it believed that the case had been arbitrated. It had not and so the court granted the plaintiff's motion to vacate the dismissal. Because disputes still existed as to which, if any, of the plaintiff's claims should be arbitrated, the court directed the parties to file position papers on the issue, which they have done. To the extent that the defendants argue that the plaintiff's claims should be dismissed for failure to state a claim, those arguments are not addressed in this order and should be the subject of a separate motion.

The plaintiff's complaint alleges claims for indemnification (Count I), wrongful termination based on her complaints of discrimination and union activity (Count II), § 1983 based on her allegation that the residency requirement is applied in a discriminatory manner (Count III), § 1983 based on her allegation that she was denied due process prior to her termination (Count IV) and a declaratory judgment on the constitutionality of the residency requirement (Count V). She asserts that none of these claims should be resolved in the upcoming arbitration.

The defendants, however, argue that all of the claims are arbitrable. Specifically, they first note that the relevant Collective Bargaining Agreement provides for the termination of employment when the residency requirement is violated. In addition, the CBA states that "[a]ll contested discipline and discharge of non-probationary bargaining unit members shall be processed through the grievance procedure contained in Article VII of this Agreement." CBA at Section 6.3, p. 7, attached as Exh. A to Defendant's Motion to Dismiss or Compel Arbitration, Dkt. #13-2. The grievance procedure includes several steps, the last of which

| STATEMENT |
|---|

is binding arbitration. It appears undisputed that the union filed a grievance on the plaintiff's behalf when she was terminated and that the parties have agreed to arbitrate her claim that she was wrongfully terminated due to a violation of the residency requirement.

"An explicit, clear statement in a CBA that all claims, including statutory claims, are to be pursued through arbitration is enforceable and precludes a federal lawsuit to enforce such statutory rights." *Manuele v. City of Springfield, Ill.*, 718 F.Supp. 2d 939 (C.D. Ill. 2010) (citations omitted). *See also National Ass'n of Broadcast Employees & Technicians-Communications Workers of America*, No. 09 C 3854, 2009 WL 4172765 (N.D. Ill. Nov. 24, 2009) ("As a general matter, courts favor arbitration and should require it 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (citation omitted).

Nevertheless, "[p]arties are only required to arbitrate disputes they agreed to arbitrate." *International Broth. of Elec. Workers, Local No. 51, AFL-CIO v. Verizon North, Inc.*, No. 07-3194, 2008 WL 5111227, at *3 (C.D. Ill. Dec. 3, 2008)(*citing United Steelworkers of Am., AFL-CIO v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). *See also Dunnigan v. City of Peoria, Ill.*, No. 09-1064, 2009 WL 2566958, at *3 (C.D. Ill. Aug. 14, 2009) ("*Gardner-Denver* stands for the proposition that 'arbitration [is] not preclusive [of statutory claims if] the collective-bargaining agreement did not cover statutory claims.'") (*quoting 4 Penn Plaza LLC v. Pyett*, --- U.S. ----, ----, 129 S.Ct. 1456, 1469, 173 L.Ed.2d 398 (2009)).

Here, as noted by the plaintiff, Section 17.1 of the CBA, entitled "Prohibition Against Discrimination," states that:

> In the application and implementation of the terms of this Agreement, the Employer and the Union agree neither will discriminate against any employee on the basis of race, sex, creed, religion, color, sexual preference, marital (including parental) status, age (over 40), national origin, or mental and/or physical handicap unrelated to the employee's ability to perform the job.

The next section, 17.2, then states that:

> *Grievances alleging violations of Section 17.1 of this Article may be processed through the arbitration step of the grievance procedure in this Agreement only if the grievant signs a waiver that the grievant shall accept the arbitrator's decision as final and binding*; that the grievant not file a claim with any federal or state anti-discrimination administrative agency arising out of the same or any related matter; and that the grievant agrees to withdraw all claims, if any, previously filed with any said agency. Said waivers are set forth below. Grievances alleging violations of this [non-discrimination] Article may be processed only through Step 2 of the said grievance procedure if the grievant does not sign said waiver.

Section 17.2 (emphasis added).

It is undisputed that the plaintiff did not sign the waiver called for with respect to grievances alleging violations of the section prohibiting discrimination. Thus, pursuant to the clear and express terms of the CBA, the claims alleging discrimination (Counts II and III) cannot be processed through arbitration. Accordingly, the plaintiff may pursue those claims in this court. *See Manuele*, 718 F. Supp. 2d at 947

| STATEMENT |
|---|

(rejecting the defendant's claim that the FLSA claim had to be arbitrated because the "the grievance procedure [in the CBA] in this case neither explicitly, clearly, nor unmistakably requires Plaintiffs to submit FLSA claims to arbitration."). *See also Dunnigan*, No. 09-1064, 2009 WL 2566958, at *3 ("If the collective bargaining agreement does not 'clearly and unmistakably' require arbitration of Plaintiff's Title VII claims, then Plaintiff's Title VII claims are not precluded here, absent some sort of agreement by Plaintiff to arbitrate those claims.") (citation omitted).

As to the plaintiff's claim that she was denied due process, Calumet City fails to point to any provision of the CBA requiring that the claim be arbitrated. Indeed, its entire discussion of the issue in its position paper goes only to the merits of the claim and not its arbitrability. *See* Calumet City Position Paper, Dkt. #28, at 4 (arguing that due process claims in the context of public employment require an entitlement to continued employment and asserting that the plaintiff has not alleged a promise of continued employment). Thus, the court concludes that the due process claim may also be pursued in this court. The same analysis and conclusion applies to the count challenging the constitutionality of the residency requirement.

Finally, Calumet City's assertion that the statutory indemnification claim must be arbitrated because it "overlaps the subject matter which is subject to the grievance arbitration procedure outlined in the Bargaining Agreement" lacks any citation to the record or supporting explanation, and is therefore rejected.

For the reasons stated above, the court concludes that the plaintiff may proceed with all of her claims in this court and the defendants' position that the plaintiff must submit her claims to arbitration is rejected.

RH/p