IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAUREEN REIFF, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>)<br>CALUMET CITY, MICHELLE )<br>QUALIKINBUSH, GEORGE VALLIS, )<br>and EDWARD GILMORE, )<br>    Defendants. ) | No. 10 C 5486<br>Judge Blanche M. Manning |

**MEMORANDUM AND ORDER**

  The plaintiff sued Calumet City in state court alleging various claims relating to her termination for violating the Calumet City residency requirement. In her first amended complaint, she alleges claims for indemnification (Count I), wrongful termination based on her complaints of discrimination and union activity (Count II), under § 1983 based on her allegations that the residency requirement is applied in a discriminatory manner and that she was denied due process prior to her termination (Counts III and IV) and a declaratory judgment on the constitutionality of the residency requirement (Count V). Both Calumet City [64-1] and the individual defendants [68-1] move to dismiss all of her claims. For the reasons stated below, the City's motion to dismiss the retaliatory discharge claim is granted. The City's motion to dismiss the remaining claims and the individual defendants' motion to dismiss are denied. In addition, the court construes the plaintiff's statement that she wishes to dismiss the retaliatory discharge claim against the individual defendants as a motion for leave to do so, and grants the motion.

**Background**

  The following well-pled facts are accepted as true for purposes of this motion to dismiss. Edward Gilmore is the chief of police of Calumet City, Michelle Qualkinbush is the mayor of Calumet City and George Vallis is the director of human resources for Calumet City. Plaintiff Reiff was a clerk for the Calumet City Police Department for seven years prior to her purported wrongful termination in October 2009. In 2007, she became active in her union Teamsters Local 726. Through 2007 and 2009, Reiff believed that the local was ineffective and began recruiting members in an attempt to take a firm position on negotiations with their employer, Calumet City, with respect to the collective bargaining agreement and replacement of Local 726.

  According to the amended complaint, the defendants became aware of Reiff's opposition and union organizing activity and began to retaliate against her by subjecting her to harassment, verbal abuse and mistreatment. Although Reiff complained to her superiors about the abuse and retaliation, they did nothing to address her concerns.

In addition, Calumet City has an ordinance that requires all officers and employees of the city to be residents of the City of Calumet, with certain specified exceptions. The Calumet City municipal code further states that any person in violation of the residency requirement shall be subject to suspension or termination. Reiff alleges that the only Calumet City employees who have been terminated based on the residency requirements are the female clerks of the Calumet City police department. Moreover, Reiff alleges that the defendants have selectively applied the residency provision to punish and retaliate against those who speak out against Calumet City policies and practices.

Reiff alleges that based on her union organizing activity and opposition to certain Calumet City policies, she was falsely accused by the defendants of violating the residency requirement. She also alleges that she was prevented from asserting a defense to the residency allegations against her at a hearing on the issue, and was thereafter terminated on October 13, 2009.

**Standard on Motion to Dismiss**

A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Seventh Circuit explained that this "[r]ule reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (internal quotations omitted); *see also McCormick v. City of Chicago*, 230 F.3d 319, 322–24 (7th Cir. 2000) (stating that claims under 42 U.S.C. § 1983 are not subject to a heightened pleading standard, but are only required to set forth sufficient allegations to place the court and the defendants on notice of the gravamen of the complaint).

However, a complaint must contain "enough facts to state a claim to relief that is plausible on its face" and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In *Ashcroft v. Iqbal*, the Supreme Court stated that a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ——, ——, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

The court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992). Nevertheless, "in examining the facts and matching them up with the stated legal claims, we give 'the plaintiff the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009)**.**

**Analysis**

      A.      § 1983 Equal Protection Claim (Count III)

           1.      *Monell claim*

"[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "In order to state a § 1983 claim against a municipality, the complaint must allege that an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514-15 (7th Cir. 2007) (citations omitted). To establish municipal liability under § 1983, a plaintiff must show that the violation of her constitutional rights was the result of (1) an express policy, (2) a widespread practice, or (3) the conduct of a person with final policymaking authority. *Id.* at 694.

The City contends that the plaintiff has failed to allege any facts in support of her conclusory allegations that the City's actions reflect a "policy, custom or pattern of official conduct of engaging and condoning discrimination against women." Specifically, the City argues that the plaintiff has only pointed to her one termination as a basis for her *Monell* claim, contrary to Seventh Circuit precedent that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident also includes proof that it was caused by an existing, unconstitutional municipal policy." *Sivard v. Pulaski County*, 17 F.3d 185, 188 (7th Cir. 1994).

In response to this argument, the plaintiff points to her allegations that she "as well as other female employees, have been terminated based on the residency ordinance where male employees also subject to the ordinance were not." FAC at ¶ 26. She further alleges that "Defendants . . . intentionally subjected Plaintiff and other female employees to unequal and discriminatory treatment by applying a residency ordinance only on female employees . . . ." *Id.* at ¶ 55. Further, the plaintiff alleges that "[t]he Defendants, policymakers all, directly and personally performed or acquiesced in acts they each had specific knowledge were illegal and with reckless disregard for the rights of the Plaintiff." *Id.* at ¶43. Finally, the plaintiff alleges that the "Defendants' actions reflect a policy, custom, or pattern of official conduct of engaging in and condoning discrimination against women" and that the individual defendants are all final policymakers "in that they all, individually and collectively, determine who is and will be subject to the enforcement of City ordinances." *Id.* at ¶¶ 57, 59. These allegations sufficiently state a *Monell* claim under the Equal Protection Clause.

           2.      *Individual defendants*

"To state a prima facie claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must demonstrate that (1) he is otherwise similarly situated to members

of the unprotected class; (2) he was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent." *Greer v. Amesqua*, 212 F.3d 358 (7th Cir. 2000).

The individual defendants first argue that because the plaintiff has alleged that the only people who are subject to the residency requirement are the city clerks, who are all female, then the city's male employees, who are not clerks, cannot be similarly situated because they would not have the same supervisor, job description or workload as the female city clerks. Thus, the defendants argue, the plaintiff has pled herself out of court.

As recently noted by the Seventh Circuit:

> The purpose of the "similarly situated" comparator element is to ensure that all other variables are discounted so that an inference of unlawful intent would be reasonable. Thus, although the "similarly situated" inquiry is a "flexible, common-sense one," the comparators must be similar enough that any differences in their treatment cannot be attributed to other variables. *See Senske v. Sybase, Inc.*, 588 F.3d 501, 510 (7th Cir. 2009) (noting that a difference in performance history would dilute the persuasive power of a similarly situated comparison in age discrimination case); *see also Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 366 (7th Cir. 2009) (similarly situated employee(s) must be "directly comparable to the plaintiff in all material aspects"). Those variables include distinctions in positions, performance, or supervisors.

*Silverman v. Board of Educ. of City of Chicago*, 637 F.3d 729 (7th Cir. 2011) (some internal citations omitted). Here, one cannot ascertain based solely on the allegations in the complaint whether the female clerks are similarly situated to other city employees who are male. Whether other employees are similarly situated is a fact-based determination to be made after discovery at the dispositive motion or trial stage. Accordingly, the court rejects this basis for dismissing the plaintiff's equal protection claim.

The individual defendants next note that the collective bargaining agreement, which was approved by the plaintiff's union, required all members of Local 726 to establish residency within Calumet City. The defendants argue that a public employee may not pursue a civil rights suit based upon an alleged constitutional infirmity where the employee's union agreed to operate under that policy and cite, in support, *Dykes v. Southeastern Pennsylvania Transp. Auth.*, 68 F.3d 1564 (3rd Cir. 1995). The plaintiff responds that the complaint alleges that she was terminated for violating Calumet City's municipal code, not the collective bargaining agreement. Regardless, even if the union had agreed to operate under the policy, the claim in this count is that the policy has been implemented discriminatorily against women. That claim is not waived by the residency requirement in the collective bargaining agreement.

The individual defendants next contend that public records, of which the court may take judicial notice, establish that the plaintiff's permanent residence was in Indiana, and therefore rebut the element of discriminatory intent. However, because the establishment of residency is a question of intent, *see Maksym v. Board of Election Com'rs of City of Chicago*, --- N.E.2d ----, 2011 WL 242421, at *8 (Ill. 2011), this issue cannot be resolved at the pleading stage.

The defendants' motions to dismiss the equal protection claim are denied.

B.     § 1983 Due Process Claim Against the Individual Defendants (Count IV)

In the fourth count of her complaint, the plaintiff sets forth a procedural due process claim, in which she alleges that although she was provided a hearing prior to her termination, the defendants denied her the opportunity to meaningfully rebut and oppose the reasons provided for her termination. According to Reiff's complaint, she had a property interest in her employment and had a continuing expectation of employment.

To state a claim for violation of procedural due process rights, the plaintiff must allege that: 1) she had a property interest in her continued employment; and 2) she was deprived of this interest without due process of law. *Krieg v. Seybold*, 481 F.3d 512, 519 (7th Cir. 2007). The individual defendants argue that Reiff has not stated a plausible violation of due process because she has not pled facts that support a property interest in her employment.

"Due-process claims in the context of public employment require an entitlement to continued employment; more specifically, the plaintiff must have 'a legitimate claim of entitlement not to lose a valuable governmental benefit except for cause.'" *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010). A state statute, state or municipal regulations, or a contract with a public entity can create a property interest in employment. *Krieg*, 481 F.3d at 519.

The plaintiff contends that the City of Calumet Municipal Code provides the basis for her property interest. Specifically, she points to §2-262 of the code which states that:

> Any person in violation of the provisions of section 2-261 of this Code shall be subject to suspension or termination *after a hearing* before the corporate authorities of the city pursuant to notice, at which time and place such person may appear and be given an opportunity to defend themselves.

*Id*. (emphasis provided by plaintiff)

Based on this section of the city code, the plaintiff asserts that because she could not be terminated "without cause and a hearing," she had a property right in her employment. However, the plaintiff has not pointed to any provision which states that she can be terminated only for cause. She only points to the provision requiring a hearing. "The mere fact that an employee is entitled to a hearing before [s]he is terminated, however, does not establish that [s]he has a

Page 5

property right in h[er] job." *Moulton v. Vigo County*, 150 F.3d 801, 805 (7th Cir. 1988). Thus, to the extent that the plaintiff relies solely on this section of the city's municipal code as a basis for the property interest in her employment, she has failed to establish such an interest.

This would normally be the end of the road for the plaintiff as to this claim. Ironically, however, in attempting to defeat another of the plaintiff's claims, the defendants have come to the plaintiff's rescue. In particular, the plaintiff has also alleged a state law retaliatory discharge count, and the City asserts in its reply in support of its motion to dismiss that a retaliatory discharge claim is a narrow exception to the doctrine of at-will employment. According to the City, because the plaintiff alleges (and the CBA, which is attached as an exhibit to the response to the motion to dismiss, establishes) that the plaintiff could only be terminated for just cause,[1] she was not an at-will employee and cannot therefore pursue a claim for retaliatory discharge. *See* Collective Bargaining Agreement, Exh. A to the City's Motion to Dismiss First Amended Complaint, § 6.1, Dkt. # 65-1. In so arguing, the defendants have conceded that the plaintiff had a property right in her employment with respect to the due process claim. *Cf. Krieg*, 481 F.3d at 520 ("Because there is no clause [in the collective bargaining agreement] stating that employees may be discharged only for just cause, [plaintiff] was an at-will employee who did not have a property right in his job."). Thus, any argument by the defendants that the plaintiff did not have a property interest in her employment is rejected.

The individual defendants, however, proffer several more reasons why the plaintiff's due process claim fails. First, they contend, that because adequate post-deprivation process existed through the grievance procedure set out in the CBA, see Exh. A to the City's Motion to Dismiss, Article VII, at p. 8, Dkt. # 65-1, the pre-deprivation hearing need not have been elaborate or extensive. Indeed, "[w]here, as here, an employee is entitled to a full hearing after he has been fired, a pre-deprivation hearing satisfies due process if the employee receives notice of the allegations, an explanation of the evidence against him, and a chance to tell his version of the story." *Powers v. Richards*, 549 F.3d 505, 511 (7th Cir. 2008). Here, the CBA provides a post-deprivation grievance which, if necessary, includes arbitration; thus, any pre-deprivation hearing merely needed to provide the plaintiff with notice, an explanation of the evidence and a chance to tell her side of the story.

"Due process is not a technical conception with a fixed content unrelated to time, place, and circumstances; instead, it is flexible and calls for such procedural protections as the particular situation demands." *Hudson*, 374 F.3d at 559 (citations, quotation marks and alterations omitted). As recently noted by the Seventh Circuit:

> To decide how much process is due, the familiar three-part *Mathews v. Eldridge* analysis provides the framework. 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). We consider (1) the private interest that will be affected by the

---

[1] Inexplicably, the plaintiff fails to cite this portion of the CBA in her complaint or her response to the defendants' motions to dismiss.

government action; (2) the risk of an erroneous deprivation with the procedures in place and the probable value of different procedures; and (3) the government's interest, including the costs of different procedures.

*Atkins v. City of Chicago*, 631 F.3d 823, 834-35 (7th Cir. 2011) (citation omitted).

The plaintiff acknowledges in the first amended complaint that she received notice of the October 13, 2009, hearing but she alleges that she was not given the opportunity to present a defense. The defendants attach to their motion to dismiss minutes from the October 13 meeting, of which they assert the court may take judicial notice. According to the defendants, the minutes establish that the plaintiff was represented by counsel at the meeting, and was given an opportunity to tell her side of the story and rebut the evidence against her. However, even assuming that the court can take judicial notice of the meeting minutes, the plaintiff asserts that the minutes cannot be relied upon as they do not accurately reflect what occurred at the meeting, *see* Response at n.3, Dkt. #79, and she contests that she was provided a proper opportunity to respond. As an initial matter, questions of fact exist as to what actually occurred at the hearing; thus, resolution of the issue at this stage of the litigation is premature. Moreover, neither of the parties goes through the three-step *Mathews v. Eldridge* analysis. Accordingly, the court denies this basis for dismissal of the due process claim.

Finally, the individual defendants assert that the "grievance procedures created by collective bargaining agreements can satisfy the requirements of due process for terminated employees." *Hudson v. City of Chicago*, 374 F.3d 554 (7th Cir. 2004). The defendants note again that the CBA provides a grievance procedure and that a post-termination grievance was filed on the plaintiff's behalf. The plaintiff responds that she was "thwarted at every step from proceeding forward" with the arbitration and argues that "there is nothing in the collective bargaining agreement, [sic] which precludes bringing a due process claim in this Court." Response at 13, Dkt. # 79. As to the latter argument, the court agrees that the plaintiff was entitled to bring her due process claim in this court, but that fact does not address whether the grievance procedure delineated in the CBA provided the plaintiff with the process that she was due. As to whether the grievance procedures available to the plaintiff satisfied due process, again, as with the pre-deprivation hearing, factual issues exist as to whether the grievance procedures were followed and neither of the parties analyzes those procedures in the context of the *Mathews v. Eldridge* factors.

The court denies the motion to dismiss the due process claim.

C.  § 1983 First Amendment Claim against all defendants (Count VI)

In this count, Reiff alleges that Calumet City and the individual defendants violated her right to free speech under the First Amendment when they terminated her for complaining about purported harassment and for resisting the City's attempt to preclude her organizing efforts with the union. To prevail on a claim of retaliation under the First Amendment, a plaintiff must

establish that: (1) she engaged in a protected activity; (2) she suffered a deprivation likely to prevent future protected activities; and (3) there was a causal connection between the two. *See Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010).

In determining whether public-employee speech is protected under the first prong, "the threshold inquiry is whether the employee was speaking as a citizen; only then do we inquire into the content of the speech [to determine if the speech related to a matter of public concern]." *Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007) (citation omitted). "[P]ublic employees speaking 'pursuant to their official duties' are speaking as employees, not citizens, and thus are not protected by the First Amendment regardless of the content of their speech." *Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007) (*citing Garcetti v. Ceballos*, 126 S. Ct. 1951, 1959-60 (2006)). The defendants contend that because Reiff alleges only that she complained to her superiors of harassment and mistreatment as a public employee rather than as a private citizen, her statements are not protected by the First Amendment. *Bivens v. Trent*, 591 F.3d 555, 560 (7th Cir. 2010) ("[C]omplaints about lead contamination that [the plaintiff] made directly up the chain of command to his supervisors are not protected by the First Amendment" because "[the plaintiff] was responsible for the safe operation of the firing range and consequently . . . he had a responsibility, as part of his job duties, to report his concerns about environmental lead contamination.").

According to the plaintiff, however, the speech she claims to be protected are not her complaints to her superiors but her attempts to recruit coworkers to take positions with respect to union negotiations and advocate for resistance regarding the terms of the collective bargaining agreement. She asserts that her employment duties did not include union organizing and thus, as alleged, her speech in that regard was undertaken as a private citizen and is therefore protected. The court agrees. Because the plaintiff has alleged that her purportedly protected speech related to union organizing and taking positions with respect to the collective bargaining agreement, such speech was undertaken as a private citizen, not an employee. *See Fuerst v. Clarke*, 454 F.3d 770 (7th Cir. 2006) ("Because Fuerst's comments that precipitated the adverse action taken against him were made in his capacity as a union representative, rather than in the course of his employment as a deputy sheriff–his duties as deputy sheriff did not include commenting on the sheriff's decision to hire a public-relations officer–the Supreme Court's recent decision in *Garcetti v. Ceballos*, – U.S. –, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), is inapposite."). *See also Zellner v. Herrick*, No. 08-C-0315, 2009 WL 188045, at *15 (E.D.Wis. Jan. 22, 2009) (concluding that the plaintiff's speech as a union representative was made as a citizen and was therefore protected by the First Amendment).

In addition, the defendants assert that Reiff's complaints do not involve a public concern and therefore are not protected by the First Amendment. *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 915 (7th Cir. 2011) (in order to receive First Amendment protection, a public employee's speech must touch upon a matter of public concern). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138,

147-48 (1983). The plaintiff alleges that she was at a union meeting where resisting policies was discussed, she became active in the union in 2007, she began recruiting members for the union in 2007 and 2008, she advocated for resistance to CBA terms and/or replacement of Local 726, and she met with several union members to discuss resisting various City of Calumet policies. The Seventh Circuit has recognized that union-organizing activity "in a broad sense, touches upon matters of public concern." *Gregorich v. Lund*, 54 F.3d 410, 415 (7th Cir. 1995).

However, subject matter alone does not mean that speech is constitutionally protected, and the court "'must instead delve deeper into the precise content, form, and context of speech that admittedly may be of some interest to the public.'" *Nagle v. Village of Calumet Park*, 554 F.3d 1106 (7th Cir. 2009) (citation omitted). The defendants assert that the plaintiff's allegations regarding her speech relate only to resolving private interests specific to her and because her speech was not intended to bring a purported wrong to light, it is not a matter of public concern. *Bivens*, 591 F.3d at 56 (in order to ascertain whether speech falls within the scope of public concern, the court considers whether it was "the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?") (citation omitted) (internal quotation marks omitted).

Because the court does not have a complete record before it regarding the content, form and context of the speech, it cannot ascertain whether the plaintiff's speech involved a matter of public concern. *See Johnson v. County of Cook*, No. 08 C 2139, 2009 WL 331531, at *4 (N.D. Ill. Feb. 10, 2009) (in First Amendment retaliation case, stating that "ascertain[ing] whether the subject matter was of legitimate news interest, or of concern to the public. . . . is simply something the Court cannot do at this stage of the litigation."). However, the court must construe all allegations in a light most favorable to the plainitff, and in doing so, the court concludes that the plaintiff has alleged sufficient facts to state a claim under the First Amendment.

The defendants also assert that the lapse in time between the alleged speech and Reiff's termination is too remote to show they are causally connected. According to the defendants, the only allegations the plaintiff makes regarding union activity in 2009 is that she attended an October 2, 2009, meeting "with several members of her union to discuss organizing to resist various policies of the City of Calumet City [sic]." FAC ¶ 31. The plaintiff further alleges that "[a]t that time, the City was engaged in union bargaining, albeit in bad faith, with the local union representatives. . . ." *Id*. at ¶ 32. The defendants assert that the collective bargaining agreement, between the union and the City, which is attached as Exhibit A to their motion to dismiss, had already been negotiated and approved by the City in July 2009; thus, the defendants assert, paragraphs 31 and 32 should be stricken as they are contradicted by an exhibit. With no other specific allegations regarding activities in 2009, the defendants assert that the plaintiff has failed to allege causation.

The court declines to strike the allegation regarding the October 2, 2009, meeting because the other allegations in the first amended complaint are sufficient to allege causation. In particular, the plaintiff alleges that "[i]n 2008 and 2009, the Plaintiff advocated for resistance to

the City of Calumet City in negotiation in the terms of the collective bargaining agreement and/or the replacement of Local 726." FAC at ¶ 15. She further alleges that the individual defendants were made aware of her efforts to oppose the City policies in a memo by Captain Wojcik on or around October 2, 2009. *Id*. at 33. Finally, the plaintiff alleges that on October 7, 2009, defendant Gilmore placed her on indefinite administrative leave for violating the City's residency requirement. *Id.* at 35. The court concludes that these statements sufficiently allege causation.

Finally, the defendants argue that public records establish that there is no but-for causation between Reiff's speech and her termination because her termination was supported by evidence showing that Reiff did not live in Calumet City. In support, the defendants point to records which they assert show that the plaintiff permanently resides in Indiana, including a mortgage with a Merrillville, Indiana address, a March 2009 homestead exemption in which the plaintiff certifies that a house in Merrillville, Indiana, was her principal place of residence, and a copy of an Indiana state identification card for the plaintiff. The defendants note that under Indiana Code 9-24-16-1, an Indiana state identification card for non-drivers (the defendants attach a letter from the Commissioner of the Indiana Bureau of Motor Vehicles stating that as of October 7, 2009, the plaintiff was an unlicensed driver in Indiana) shall only be issued to residents of Indiana. Based on all of these records, of which the defendants contend the court can take judicial notice, the defendants assert that she would have been terminated regardless of her speech and thus, she cannot show but-for causation. However, as already noted, the issue of residency involves a question of intent that cannot be resolved at this stage of the litigation.

The defendants' motion to dismiss the First Amendment claim is denied.

D.    State Law Claims

1.    *Count II–Wrongful Termination against all defendants*

While the amended complaint titles this claim "wrongful termination," in her response, the plaintiff clarifies that the claim is one for retaliatory discharge. "In Illinois, in order to establish a tort claim for retaliatory discharge, a plaintiff must show (1) that she has been discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy." *Bajalo v. Northwestern University*, 860 N.E.2d 556, 559 (Ill. App. Ct. 2006) (citation omitted). However, the Illinois Supreme Court has noted that it is a "limited and narrow cause of action." *Turner v. Memorial Medical Center*, 911 N.E.2d 369, 374 (Ill. 2009).

As for the individual defendants, they argue that only an employer, here, the City, can be liable for retaliatory discharge and therefore, the claim against the them must be dismissed. *Buckner v. Atlantic Plant Maintenance, Inc*., 694 N.E.2d 565, 570 (Ill. 1998). The plaintiff agrees and, as construed, the court grants the plaintiff's motion to voluntarily dismiss the retaliatory discharge claim against the individual defendants.

Regarding the City, it asserts that the retaliatory discharge claim must be dismissed as "patently frivolous." The court agrees that the retaliatory discharge claim must be dismissed. "[A] terminated *at-will* employee may bring an action for retaliatory discharge." *Hess v. Kanoski & Associates*, No. 09-3334, 2011 WL 924843, at *6 (C.D. Ill. Mar. 11, 2011) (emphasis added). As already discussed above in the context of the plaintiff's due process claim, Reiff was not an at-will employee as she could only be dismissed under the terms of the CBA for "just cause." Thus, because she was not at-will, she cannot maintain a claim for retaliatory discharge. The court grants the City's motion to dismiss this claim.

> 2. *Count V–Residency requirement violates the Illinois Constitution (against Calumet City)*

Reiff asserts that the residency requirement violates the Illinois Constitution in that the City has discriminatorily applied it only to females. The City contends that the plaintiff cannot pursue a civil rights suit based upon a constitutional infirmity where her union agreed, in the relevant CBA, to operate under that policy (*i.e.*, the residency requirement).

This argument fails for the reasons stated above regarding the plaintiff's equal protection claim under the federal constitution. Even if the union had agreed to operate under the policy, the claim in this count is that the policy has been applied discriminatorily against women, and is not waived by the residency requirement in the collective bargaining agreement.

Thus, the motion to dismiss this claim is denied.

**Conclusion**

For the reasons stated above, the plaintiff's motion, as construed, to voluntarily dismiss the retaliatory discharge claim against the individual defendants is granted. The City's motion to dismiss [64-1] is granted in part and denied in part. Specifically, the City's motion to dismiss the retaliatory discharge claim is granted while the City's motion to dismiss the remaining claims is denied. The individual defendants' motion to dismiss [68-1] is denied. Status hearing is set to October 6, 2011 at 11:00 a.m.

**DATE**: August 30, 2011

                                       *Blanche M. Manning*
                                       **Blanche M. Manning**
                                       **United States District Judge**