# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MAUREEN REIFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 10 C 5486 |
| CALUMET CITY, a municipality incorporated ) | |
| under the laws of Illinois, MICHELLE ) | Judge John J. Tharp, Jr. |
| QUALKINBUSH, in her capacity as mayor of ) | |
| Calumet City, GEORGE VALLIS, in his ) | |
| capacity as Director of Personnel for Calumet ) | |
| City, and EDWARD L. GILMORE, in his ) | |
| individual capacity and as Chief of Police of ) | |
| Calumet City, ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Maureen Reiff, brought this case against Calumet City and three of its municipal officials: Mayor Michelle Qualkinbush, Director of Personnel George Vallis, and Chief of Police Edward L. Gilmore. Reiff moves for leave to file a Second Amended Complaint ("SAC") asserting that the City unlawfully fired her for violating its employee residency requirement. In the SAC Reiff seeks relief under the following theories: that she was terminated in violation of her right to Equal Protection under the federal and the Illinois constitutions (Counts II and V); that she was terminated in violation of her federal right to due process (Count IV); that she was terminated in retaliation for exercising her rights under the First Amendment (Count VI); and that the City is liable for her under the state indemnification statute (Count I). SAC, Dkt. # 227-1. Reiff also reasserts her state-law wrongful termination claim (Count II), but this claim was previously dismissed with prejudice. Order, Dkt. # 90 at 10-11 (Manning, J.). The

defendants move to dismiss (or deny leave to file) the SAC on the ground that it fails to state a claim.[1] For the following reasons, the parties' respective motions are granted in part and denied in part; Counts I, IV, and VI of the SAC may go forward.

## BACKGROUND

The City employed Reiff as a clerk in the Calumet City Police Department for seven years until October 13, 2009. On that date, the City Council unanimously voted to terminate Reiff's employment because the aldermen found her to be in violation of Section 2-262 of the city code, requiring City employees to reside within the City of Calumet. Denying that she had violated the residency requirement and claiming that she was at all times during her employment a resident of Calumet City, Reiff sued the City in the Circuit Court of Cook County. Her original complaint asserted claims under 42 U.S.C. § 1983 that the defendants had violated her equal-protection right by discriminatorily enforcing the residency requirement against women and had denied her due process in connection with her termination. She also brought state-law claims for indemnification and wrongful discharge and sought a declaration that the City's residency requirement violates the state Constitution.

The defendants removed the case to this Court. Reiff amended her complaint to add a claim under § 1983 that the defendants violated her First Amendment rights by retaliating against her for advocating that her union take a tougher stance in its negotiations with the City. The defendants moved to dismiss the First Amended Complaint in its entirety. Judge Manning, the

---

[1] The defendants responded to the plaintiff's motion for leave to amend by filing a "motion to dismiss plaintiff's second amended complaint at law and response to plaintiff's second motion for leave to file second complaint." Mot., Dkt. # 233. The defendants presumably styled the motion in this manner because the Court directed them to include any substantive arguments as to the sufficiency of the complaint in their response to the plaintiff's renewed motion for leave to file a second amended complaint. For simplicity, and because it has been analyzed as such, the Court will simply refer to the defendant's pleading as a motion to dismiss the SAC.

district judge originally assigned to this case, granted the motion to dismiss the wrongful discharge claim (Count II of the FAC), but denied the motion as to the remaining claims.

Discovery began. The City targeted Reiff's assertions that she had maintained residency in the City and adduced significant evidence suggesting that Ms. Reiff misrepresented her residency in the course of this lawsuit. The City therefore moved for sanctions; the plaintiff countered with her own motion for sanctions and also moved for leave to further amend her complaint. Magistrate Judge Finnegan, who was supervising discovery, denied the plaintiff's motion for sanctions and recommended that the Court deny both the defendants' motion for sanctions and the plaintiff's motion for leave to amend the complaint. After a hearing, the Court accepted Magistrate Judge Finnegan's recommendations. The Court granted the plaintiff leave to file a further motion to amend, however, and directed the defendants to respond to that motion with any substantive arguments for dismissal of the proposed amended counts.

Reiff then filed her second motion for leave to file a second amended complaint, and in the proposed pleading, she no longer alleges that she complied with the City's residency requirement during all times relevant to her complaint, *compare* FAC, Dkt. # 55 ¶ 28 *with* SAC, Dkt. 227-1 ¶ 9, or that the City discriminatorily enforced its residency requirement against women only. *Compare* Dkt. 55 ¶ 24027 *with* Dkt. 227-1 ¶¶ 30-32. Rather, she now alleges that the City violated her equal-protection rights by arbitrarily enforcing its residency requirement against her but not other employees. Reiff also continues to maintain that the residency requirement was enforced against her in retaliation for her complaints about workplace harassment and her union advocacy.

In its response to Reiff's second motion to file a SAC, the City argues that leave should be denied, or that the proposed SAC should be dismissed, because it fails to state a claim upon

which relief can be granted. Reiff did not file a reply to the City's arguments. *See* Order, Dkt. # 229 ("Reply is due 5/14/14").

## DISCUSSION

Under Rule 15(a)(2), courts are to freely give parties leave to amend their pleadings "when justice so requires, " Fed. R. Civ. P. 15(a)(2), but should not allow plaintiffs to amend their complaints when doing so would be futile. *Moore v. State of Ind.*, 999 F.2d 1125, 1128 (7th Cir. 1993) (internal citations omitted). "A district court need not allow the filing of an amended complaint . . . if it is clear that the proposed amended complaint is deficient and would not survive a motion to dismiss." *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008) (internal citation omitted). Because the City alleges that granting Reiff's motion would be futile, the Court evaluates whether Reiff's claims would survive a motion to dismiss.

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). When reviewing a plaintiff's complaint, the Court must accept all of the plaintiff's factual allegations as true. *Id.* In contrast, conclusory allegations merely restating the elements of a cause of action do not receive this presumption. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).

A.      **Federal Equal Protection Claim (Count III)**

As noted, Reiff's equal-protection claim began was originally premised on alleged gender discrimination. Now, the City argues, Reiff appears to be asserting an equal protection "class–of–one" claim because she removed language from her first amended complaint alleging that the City enforced the residency ordinance only against women. *See, e.g.*, FAC ¶ 61 (deleting allegation that unequal and disparate treatment was "sexual" discrimination). *Compare also, e.g.,* FAC, Dkt. # 55 ¶¶ 26, 55, 56, 57, 60, 74 *with* SAC, Dkt. # 227-1 ¶¶ 26, 56, 57, 58, 60, 76, respectively. Although the SAC still states in the opening paragraph that the plaintiff "seeks redress for gender discrimination," the Court agrees that the clear import of the modifications to the SAC are to remove the prior claim of gender discrimination; the reference to gender discrimination in paragraph one appears to be a remnant from the earlier version. Accordingly, the Court agrees that the plaintiff is seeking relief as a "class-of-one" by alleging the irrational and arbitrary application of the residency law, not discrimination based on her membership in a protected class. *See D.B. ex rel. Kurtis B. v. Kopp,* 725 F.3d 681, 685 (7th Cir. 2013) ("class-of-one" equal protection claim arises "when a classification consists of singling out just one person for different treatment for arbitrary and irrational purposes").

Reiff's class-of-one equal-protection theory fails because "the class-of-one theory of equal protection has no application in the public employment context." *Engquist v. Oregon Department of Agriculture,* 553 U.S. 591, 607 (2008). As the Supreme Court explained in *Engquist*, allowing class-of-one claims in the context of public employment decisions would risk turning every exercise of supervisory and managerial discretion in the public employment sphere into a potential constitutional claim, *id.* at 599, 607-08, and would "impermissibly constitutionalize the employee grievance," *id.* at 609. Accordingly, as the Seventh Circuit has

confirmed, the Supreme Court has foreclosed class–of–one claims "based on the highly discretionary and individualized sorts of decisions that public employers must make about their employees." *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010) (citing *Engquist*). Decisions about when and how a public employer interprets and enforces residency requirements fall easily within the category of discretionary managerial decisions that are immune from class-of-one-claims. *See, e.g., Langmead v. Monroe County Office of Sheriff*, No. 11-CV-6003-CJS, 2013 WL 3759958, at *8 (W.D.N.Y. July 15, 2013) (rejecting "class-of-one" equal protection claim based on claim of selective enforcement of residency requirement as foreclosed by *Enquist*). Reiff therefore cannot bring this equal protection claim in her Second Amended Complaint.[2]

### B. State Equal Protection Claim (Count V)

Count V of the SAC asserts that the City's residency ordinance violates the Illinois Constitution's Equal Protection Clause.[3] There is a threshold issue of whether the Court can even address this claim. Reiff's challenge is not a facial challenge—she does not contend that a

---

[2] The defendants also argue that the SAC fails to allege sufficient facts to support the conclusory allegation that the City failed to enforce the residency ordinance against other "similarly situated" employees and so must be dismissed on that basis. To allege a class–of–one claim, a party must show "(1) it has been intentionally treated differently from others similarly situated; and (2) there is no rational basis for the difference in treatment or the cause of the differential treatment is a totally illegitimate animus toward [the party]." *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1002 (7th Cir. 2006) (internal quotation marks and citation omitted). The Court agrees that the SAC fails to adequately allege arbitrary enforcement among similarly situated comparators, but it would dismiss on this basis without prejudice. Because the class-of-one claim is not cognizable, however, there is no basis to further replead; the dismissal is with prejudice.

[3] In fact the plaintiff alleges that the ordinance violates "Article II, Section 1," of the Illinois Constitution. Article II, Section 1 of the Illinois Constitution states, in its entirety: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Plainly, this provision has nothing to do with the arbitrary enforcement of a municipal residency ordinance. The Court presumes that the plaintiff intended to invoke Article I, Section 2 of the state Constitution, which provides that "No person shall be ... denied the equal protection of the laws."

residency requirement is unconstitutional *per se*. Rather, she makes an as-applied challenge, contending that the ordinance was enforced arbitrarily and capriciously against her.[4] An as-applied challenge does not seek to invalidate the statute itself, or to bar its enforcement altogether, but rather to bar a specific application of the statute as unconstitutional; it seeks, in other words, an injunction barring enforcement of the statute against the plaintiff under the circumstances at issue. Ordinarily, federal courts lack subject-matter jurisdiction over a claim that seeks an injunction against a unit of state government based solely on an allegation that the defendant violated state law. *See, e.g., Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 527 (7th Cir. 1988) ("[A] district court may not use its views of state law as the basis of relief against the state itself.") (citing *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 (1984)). The Court has discretion to exercise supplemental jurisdiction over such a claim pursuant to 28 U.S.C. § 1967(a) and (c), but nevertheless the question of "[h]ow far state law exposes state and local agencies to liability is a delicate question that federal judges should hesitate to tackle." *Myers v. County of Lake, Indiana*, 30 F.3d 847, 849 (7th Cir. 1994).

But here, two related reasons suggest that it is appropriate for the Court to exercise its discretion in favor of supplemental jurisdiction notwithstanding the caution that should be exercised in enjoining the application of state law by state actors. First, the premise of this state-law claim is indistinguishable from that of the federal claims that the plaintiff has advanced. As noted, the plaintiff's federal equal protection claim asserts a class-of-one claim predicated on arbitrary enforcement of the residency ordinance; the state constitutional claim does the same.

---

[4] In paragraphs 71 and 75, the SAC alleges that the ordinance is enforced in discriminatory fashion as to females. These allegations are inconsistent with the plaintiff's abandonment and disavowal of her gender-based discrimination theory and are likely remnants that the plaintiff neglected to delete from the SAC. If that is not the case, however, then the discrimination claims lack adequate factual support in view of the plaintiff's amendments deleting references to alleged sexual discrimination from the SAC.

And second, "in conducting an equal protection analysis, [the Illinois Supreme Court] applies the same standards under the United States Constitution and the Illinois Constitution." *In re Derrico G.*, ---N.E. 3d ----, 2014 WL 3810330, at *20 (Ill. 2014). There seems little reason to leave this claim to be dropped on a state court's doorstep at a later date when the same legal principles will guide the result. Reiff's claim that Section 2-262 violates the Illinois Constitution merely duplicates the plaintiff's "class-of-one" theory, which also posits arbitrary and capricious application of the law. There is no substantive difference in the elements of a class-of-one claim under either state or federal law, *see Kaczka v. Retirement Bd. of Policemen's Annuity & Benefit Fund*, 923 N.E.2d 1282, 1287, 398 Ill. App. 3d 702, 707 (1st Dist. 2010) (elements of class-of-one claim are same "either under federal or state law"), so there is no reason to conclude that the claim would fare any better styled under the Illinois, rather than the Federal, Constitution.[5]

In any event, the residency requirement is also included in the collective bargaining agreement that governs Reiff's employment with the City. The constitutionality of the statutory residency requirement is effectively irrelevant to Reiff because she was bound by contract as well; there is no injury uniquely caused by the ordinance itself. And indeed, as the City points out, under the Illinois Public Labor Relations Act, the CBA residency provision supersedes any inconsistent provision in the City's ordinance. *See* 5 ILCS 315/15(b) ("any collective bargaining contract between a public employer and a labor organization ... shall supersede any contrary statutes"). Barring enforcement of the ordinance against Reiff would provide no relief.

---

[5] Illinois follows a "limited lockstep" doctrine in which "departure from the United States Supreme Court's construction of [cognate provisions of the state and federal constitutions] will generally be warranted only if we find in the language of our constitution, or in the debates and the committee reports of the constitutional convention, something which will indicate that the provisions of our constitution are intended to be construed differently than are similar provisions in the Federal Constitution, after which they are patterned." *Hope Clinic for Women, Ltd. v. Flores,* 991 N.E.2d 745, 757 (Ill. 2013).

## C. Due Process Claim (Count IV)

Reiff's due process claim survives for essentially the same reasons set forth in Judge Manning's prior order denying the defendants' motion to dismiss the claim from the first amended complaint. To state a procedural due process claim, Reiff "must allege (1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). Consistent with Judge Manning's earlier ruling, the City does not contest that Reiff had a property interest in her continued employment as a clerk for the Calumet City Police Department.[6] It argues instead that the claim must be dismissed because the City provided adequate process to contest the termination. "If a procedural due process claim lacks a colorable objection to the validity of the State's procedures, no constitutional violation has been alleged." *Hamlin v. Vaudenberg*, 95 F.3d 580, 583 (7th Cir. 1996) (internal quotation marks and citation omitted). The Court therefore focuses on whether Reiff has sufficiently alleged that the procedural protections she was afforded were insufficient to safeguard her rights.

Because the legal adequacy of pre-termination procedures depends on the extent of post-termination procedures, *Michalowicz*, 528 F.3d at 534, the Court looks first to the post-termination procedure available to Reiff. The CBA between Reiff's union and the City provides a grievance procedure, including a right to demand arbitration, to terminated employees. *See* Dkt. 234-2 at 8-9; Dkt. 234-3 at 8-10. Reiff does not challenge the adequacy of the CBA grievance process, however; instead, she contends that her termination is not covered by the CBA because compliance with the City's residency requirement was not a collectively bargained

---

[6] In ruling on the defendants' motion to dismiss the first amended complaint, Judge Manning held that because the CBA allows termination only "for just cause," Reiff is not an at-will employee and therefore has a property right in her employment with the City. Mem. Op., Dkt. # 91 at 7.

term or condition of employment. In that regard, Reiff is simply wrong; compliance with the City's residency ordinance constitutes a term of the CBA that governed Reiff's employment. *See* Dkt. # 234-3 at 7, § 5.6 – Residency ("All employees are required to establish a *bona fide* residence within the City of Calumet City .... Merely maintaining an address in the City is not sufficient.").

Because Reiff had access to a substantive post-termination process pursuant to the CBA, and has not challenged the fairness of that process, the pre-termination procedure available to her "need only provide 'an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'"*Michalowicz*, 528 F.3d at 536-537 (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 545-546 (1985)). This procedural requirement means that the City needed to (1) give Reiff notice of the alleged residency violation, (2) disclose its evidence of this violation, and (3) provide an opportunity for Reiff to tell her side of the story. *Michalowicz*, 528 F.3d at 537.

In her amended pleading Reiff alleges that at the City Council meeting where she was terminated for being a non-resident, she "was denied the opportunity to assert a defense to the allegations against her or present evidence on her behalf," SAC, Dkt. # 227-1 at 7. This constitutes fair notice of a colorable objection to the fairness of pre-termination procedures.[7] The

---

[7] The City argues that Reiff's deposition testimony, in which she stated after reading the October 13, 2009, Council meeting's minutes that she did not believe anything was incorrect, conflicts with her claim that she was denied an opportunity to present a defense at the Council meeting. At this juncture, however, the Court is assessing the adequacy of the pleadings and assuming their truth; a factual dispute raised by the defendant cannot presently be resolved against the plaintiff. The defendants argue that the plaintiff should not be permitted to replead this claim in bad faith, but she is not "repleading" this claim. The claim has already been addressed by Judge Manning, who denied the defendants' previous motion to dismiss it; the plaintiff has no need to "replead" it. The Court notes, however, that in addressing the defendants'

City contests her allegation as a factual matter. According to the City, it offered Reiff an opportunity to assert a defense at the October 13, 2009, City Council meeting but she chose not to do so on the advice of counsel. In support of this contention, the City attached the minutes of this meeting—unauthenticated materials outside the record that are neither mentioned in nor central to Reiff's pleading. Mem., Dkt. 234-6 at 3-5. At this stage, factual disputes cannot be resolved against the well-pleaded allegations in the complaint; therefore Reiff's due process claim withstands the renewed motion to dismiss it.

### D. First Amendment Retaliation (Count VI)

The City also moves to deny leave for Reiff to reassert her claim that the City violated her First Amendment rights by terminating her employment. The defendants made the same argument in seeking dismissal of the FAC, and Judge Manning rejected it; they offer no new argument here.

To plead a First Amendment retaliation claim Reiff must sufficiently allege that statements allegedly giving rise to the retaliation were made in her capacity as a citizen speaking on a matter of public concern, rather than pursuant to her official duties as a public employee. *See Lane v. Franks,* 134 S. Ct. 2369, 2378 (2014); *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007). She must also plausibly allege that her interest "'as a citizen in commenting on the matter [was not] outweighed by the interest of the government in promoting effective and efficient public service.'" *Lane,* 134 S. Ct. at 2378; *Garcetti,* 547 U.S. at 418; *Matrisciano v. Randle*, 569 F.3d 723, 732 (7th Cir. 2009) (internal quotation marks and citation omitted). The Court "take[s] a practical view of the facts alleged in

---

motion for sanctions, it has already advised Ms. Reiff directly about the potential consequences of making false statements and allegations in pursuit of her claims in this case. This fact question will be resolved at an appropriate point in the case.

the complaint, looking to the employee's level of responsibility and the context in which the statements were made." *Abcarian*, 617 F.3d at 937. Reiff claims that her employment was terminated because she reported alleged discriminatory employment practices by the City and advocated for better union organization and a tougher negotiating stance vis-à-vis the City.

Although Reiff alleges in the SAC that the defendants "were informed of the Plaintiff's efforts to oppose the discriminatory employment policies of the City," ¶ 18, the SAC does not identify the policies Reiff purportedly opposed, how or when she opposed those policies, or how or when the defendants were informed about her opposition to such policies. This single, conclusory, allegation is entirely inadequate to plead a plausible claim that the defendants retaliated against her for speaking out against some unidentified discriminatory policies.

But Reiff also alleges that the City terminated her employment in response to her statements encouraging union organization, and it is on the basis of these allegations that Judge Manning previously denied the defendants' motion to dismiss Reiff's First Amendment claim. Mem. Op., Dkt. # 91 at 7-9. Specifically, Reiff claims that she (1) recruited members to take a firm position on negotiating with the City; (2) promoted "resistance" in negotiating the terms of a new CBA or the replacement of her union; and (3) talked with members of her union to discuss organizing resistance to City policies. SAC, Dkt. # 227-1 at 3. The defendants argue that Reiff's advocacy with respect to union issues took place "in the context of Plaintiff's public employment about her official duties," Mem., Dkt. # 234 at 11, but that contention does not bear scrutiny. Reiff's official duties had nothing to do with union organizing, negotiating with the union, or setting employment policies; she was a clerk in the Police Department. That her employment gave her an informed perspective and motivation to engage in discourse on the subject of negotiations between the City and the Union does not make her discourse any more part of her

duties as an employee than did the commentary by a teacher with regard to a school board's consideration of budgetary matters that the Supreme Court held in *Pickering v. Board of Education,* 391 U.S. 563 (1968) to be protected speech. *See also Fuerst v. Clarke*, 454 F.3d 770, 775 (7th Cir. 2006) (deputy sheriff spoke in his capacity as a union representative, and therefore private citizen, rather than as an employee of the Sheriff's department where his official duties did not include such commentary). Reiff was hardly advocating that the union take a tougher negotiating stance "pursuant to her official duties," *Garcetti*, 547 U.S. at 421; she engaged in that activity as a private citizen.[8]

The defendants also argue that Reiff's statements concerning and relating to the negotiations with the union did not involve a matter of public concern. Judge Manning previously held that this issue presents issues of fact that cannot presently be resolved on the pleadings because there is not an adequate record on the pleadings "regarding the content, form and context of the speech" at issue. The Court agrees. While the defendants may ultimately adduce evidence that shows that the plaintiff's speech was not directed to matters of public concern, the Seventh Circuit has recognized that union-organizing activity "in a broad sense, touches upon matters of public concern." *Gregorich v. Lund*, 54 F.3d 410, 415 (7th Cir. 1995). The pleadings suffice, if just barely, to plausibly allege that the plaintiff was engaged in such

---

[8] The defendants' citation to *Bivens v. Trent*, 591 F.3d 555, 561 (7th Cir. 2010) for the proposition that grievances reported by a public employee up the chain of command are by definition public, rather than private, speech is misplaced, for at least two reasons. First, *Bivens* includes no such holding; rather, the facts in that case involved a plaintiff who was reporting problems within the scope of his normal job duties up through his chain of command; the case says nothing at all about reports to superiors that fall outside the scope of a public employee's job duties. Second, there is no allegation here that Reiff reported anything up the chain of command; rather, the complaint alleges that the defendants "became aware" of her activities with respect to the union. SAC, Dkt. # 227-1 ¶ 19.

activity and that her related speech was therefore about a matter of sufficient public concern to implicate the First Amendment.

Finally with respect to the First Amendment claim, the Court notes that the defendants do not argue in this motion that the interests of the City as an employer outweigh the interests of Reiff as a citizen in commenting on this matter of public concern. The Court therefore has no occasion to assess issues such as whether Reiff's activities threatened discipline or interfered with the performance of Reiff's duties. *See generally Matrisciano*, 569 F.3d at 732-733 (identifying factors to be considered in balancing employer's interests against plaintiff's first amendment rights). Nor have the defendants reasserted their previous argument that the plaintiff cannot demonstrate that her protected speech was a but-for cause of her termination. That argument is predicated on the defendants' claim that Reiff was not a resident of Calumet City and was terminated solely for that reason; as the Court has held, that issue presents fact questions that are not appropriately resolved in the context of this motion to file an amended pleading.

### E. Indemnification Claim (Count I)

The City's opposition to Reiff's statutory indemnification claim is premised on the dismissal of all her other claims. Because Reiff's due-process and retaliation claims survive, there is no basis to deny leave for Reiff to reassert her indemnification claim.

\*   \*   \*

Based on the foregoing, the Court grants Reiff's motion for leave to file a Second Amended Complaint to the extent that she may proceed on her First Amendment retaliation claim premised on her union activities, her procedural due-process claim, and her statutory indemnification claim; her motion is denied as to the remainder of the proposed SAC because those proposed claims are futile. Therefore, the City's motion to dismiss the proposed SAC is

granted in part, as to the federal and state equal-protection claims, and the wrongful termination claim, but denied as to the remainder of the proposed claims.

Date: September 10, 2014

John J. Tharp, Jr.
United States District Judge